United States Court of Appeals
Fifth Circuit

**F I L E D**

July 23, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 07-30086
_____

HASPEL & DAVIS MILLING & PLANTING COMPANY LTD, represented
herein by its President, Karl M Samuels; POYDRAS MINERALS
LLC, successor in interest of Poydras Realty Company, represented
by its co-managers George B Jurgens III & Frank A Tessier, Billie
Breuille, Arthur Q Davis, Lawrence H Iverson, for themselves
and on behalf of all members of a state recognized class action

                    Plaintiffs - Appellees

     v.

BOARD OF LEVEE COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT

                    Defendant - Appellant

     and

STATE OF LOUISIANA

                    Movant - Appellant

_____

Appeals from the United States District Court
For the Eastern District of Louisiana
_____

Before HIGGINBOTHAM, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

     The defendant, Board of Commissioners of the Orleans Levee
District (the "Levee Board"), appeals the district court's summary
judgment in favor of the plaintiffs, owners of property
expropriated as part of the Bohemia Spillway (the "landowners").

The money judgment in favor of the landowners and against the Levee Board is in the amount of $17,442,332.87, plus interest, costs, and attorneys' fees. The Levee Board also appeals the district court's denial of its motion to vacate writs of seizure issued by the district court. The State of Louisiana (the "State") appeals the denial of its motion to intervene. For the reasons that follow, we REVERSE the district court's judgment and RENDER judgment for the Levee Board, dismissing the landowners' takings claim with prejudice. We VACATE the writs of seizure and AFFIRM the denial of the State's motion to intervene.

## I. BACKGROUND

In 1924, the State authorized the Levee Board to acquire land to build the Bohemia Spillway.[1] However, in 1984, the Louisiana legislature directed the Levee Board to return the land to its former owners and to "provide a thorough accounting . . . concerning all revenues received from the affected property."[2] After unsuccessfully challenging the constitutionality of this law,[3] the Levee Board issued quitclaim deeds to the landowners (or their successors). However, the Levee Board did not pay the landowners the mineral royalties that the Levee Board received

---

[1] 1924 La. Acts 99.

[2] 1984 La. Acts 233; La. Const. art. VII, § 14(B).

[3] Bd. of Levee Comm'rs of the Orleans Levee Bd. v. Huls, 852 F.2d 140, 141-43 (5th Cir. 1988); Bd. of Comm'rs of the Orleans Levee Dist. v. Dep't of Natural Res., 496 So. 2d 281, 285 (La. 1986).

2

between June 1984 and the time the land was returned.

In February 1988, Haspel & Davis Milling & Planting Co., Ltd.; Jean Connell; Joseph Torre; Bohemia Planting Co., Inc.; Leonie Rothschild; and Arthur Davis, on behalf of themselves and all other persons similarly situated, former owners of property expropriated as part of the Bohemia Spillway or their successors, filed a class action in state court seeking, inter alia, a declaratory judgment decreeing that title to the mineral and other royalties vested with the original owners as of the effective date of Act 233 of 1984.[4] The landowners subsequently amended and supplemented their petition numerous times to assert, inter alia, a claim that an unconstitutional taking occurred when the Levee Board continued to collect and failed to return the mineral royalties.

After 12 years of litigation in state court, the parties entered into a Settlement Agreement (the "Settlement Agreement"), which was approved by the state court via a Consent Judgment. In the Settlement Agreement, the landowners settled all their claims against the Levee Board in return for a payment of $2,318,263.72 immediately and another $18,767,145.26 "as and if funds are appropriated thereof." Pursuant to the terms of the Settlement Agreement, if the Levee Board did not pay at least $2,600,000 per year, the landowners could exercise their rights to enforce the

---

[4]Haspel & Davis Milling & Planting Co., Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist., 680 So. 2d 159 (La. Ct. App. 4th Cir. 2002).

3

Consent Judgment "in accordance with this Agreement and law." Although the Levee Board made numerous payments under the Settlement Agreement, the payments were less than the $2,600,000 per year called for by the Settlement Agreement.[5]

In July 2006, the landowners filed this action in federal court, alleging that the Levee Board's failure to pay the amount contemplated by the state court Consent Judgment was an unconstitutional taking of their property. In response, the Levee Board filed a Rule 12(b)(6) motion to dismiss on grounds that, inter alia, the Levee Board's failure to discharge its obligations under the Consent Judgment and Settlement Agreement did not give rise to a takings claim. According to the Levee Board, the landowners chose to compromise their takings claim and, in doing so, converted any takings claim into a claim for breach of contract.[6]

Citing our decision in Vogt v. Board of Commissioners of the Orleans Levee District ("Vogt I"),[7] the landowners filed a Motion for Partial Summary Judgment, maintaining that the Levee Board's intentional failure to satisfy the state court judgment did

---

[5]In June 2005, the parties entered into a second Settlement Agreement, which was subsequently set aside by the state court. This second Settlement Agreement has no bearing on the instant suit.

[6]This argument was the basis of the Levee Board's opposition to the landowners' motion for summary judgment.

[7]294 F.3d 684 (5th Cir. 2002).

constitute a violation of the Takings Clause.

The district court agreed with the landowners, and denied the Levee Board's motion to dismiss and granted the landowners' motion for summary judgment.[8] The district court then entered a judgment awarding the landowners $17,442,332.96, plus unquantified prejudgment interest, post-judgment interest, costs, and attorneys' fees.

The Levee Board filed a conditional notice of appeal from the district court's judgment, although it disputed that the district court's judgment constituted a final, appealable judgment under 28 U.S.C. § 1291.[9]

While this appeal was pending before us, the Levee Board moved in the district court for an automatic stay of execution without bond of the court's judgment, pursuant to Fed. R. Civ. Proc. 62(f), which was denied by the district court. We affirmed the district court's denial, concluding that Rule 62(f) was inapplicable to this case.

The landowners then began taking steps to execute the judgment by arranging for the issuance of writs of _fieri_ _facias_ and garnishment orders, which the Levee Board moved to vacate as a

---

[8]Concluding that the matter was "ripe for a full and final judgment," the district court considered the landowners' Motion for Partial Summary Judgment to be a Motion for Summary Judgment.

[9]The Levee Board previously objected in the district court to the judgment on the ground that, inter alia, the judgment did not calculate the amount of prejudgment interest.

violation of Fed. R. Civ. Proc. 69(a) and La. Const. art. XII, § 10.  Alternatively, the Levee Board sought a stay pending appeal under Fed. R. Civ. Proc. 62(d).  Around this time, the State also moved to intervene in the action solely to enforce State laws prohibiting the seizure and garnishment of public property and funds.  The district court denied all motions.

The State and the Levee Board appealed these rulings. However, we subsequently dismissed the appeal on the ground that the district court's judgment was not final because it failed to calculate prejudgment interest.[10]

On remand, the Levee Board again moved the district court to vacate its writs of seizure and related orders.  Although the district court granted the Levee Board's motion, it made clear that, upon entry of a final judgment and expiration of the requisite delays, the landowners could again seek execution of the judgment.  The district court then entered an amended judgment awarding the landowners $17,442,322.87, along with prejudgment interest in the amount of $205,331.98, and post-judgment interest, costs, and attorneys' fees.  The Levee Board then filed the instant

---

[10]In response to a request from the Fifth Circuit Clerk's office that the parties address whether we had jurisdiction over the appeal, the Levee Board filed a motion to dismiss the appeal for lack of jurisdiction.  As a result, the appeal was initially dismissed by the Clerk pursuant to 5th Cir. R. 42.1, which permits dismissal where the appellant files an unopposed motion to dismiss. However, the next day, the Clerk received a motion from the landowners opposing the dismissal. We subsequently vacated the Clerk's order and granted the Levee Board's motion to dismiss for lack of jurisdiction. In doing so, we also dismissed the Levee Board's motions to stay execution and vacate seizure.

6

appeal.

The Levee Board again moved the district court to stay the judgment without bond and to prohibit further seizures, which were denied. The Levee Board then moved this court to stay execution without bond and to vacate seizure orders. We granted the Levee Board's stay of execution, but carried the motion to vacate the seizure orders with the case.

The Levee Board appeals the district court's money judgment in favor of the landowners and the denial of its motion to vacate the writs of seizure. In addition, the State appeals the denial of its motion to intervene.

## II. TAKINGS CLAIM

We review both the district court's grant of summary judgment and its denial of the motion to dismiss de novo.[11]

The Levee Board argues that its failure to fulfill its obligations under the Settlement Agreement and the Consent Judgment only gives rise to a breach of contract claim and, thus, the landowners have no valid 42 U.S.C. § 1983 takings claim. According to the Levee Board, the instant suit is nothing more than an attempt by the landowners to have a federal court enforce the state court Consent Judgment approving the Settlement Agreement.

The landowners, on the other hand, maintain that the Levee Board's alleged intentional failure to satisfy the state court

---

[11]Coop. Benefit Adm'rs, Inc. v. Ogden, 367 F.3d 323, 328 (5th Cir. 2004).

judgment constitutes an unconstitutional taking.  The landowners contend that we previously rejected the Levee Board's argument in Vogt I.[12]

The instant case is distinguishable from the situation we faced in Vogt I.  Prior to filing suit in federal court, the landowners in Vogt I brought suit in state court requesting, inter alia, (1) a declaratory judgment confirming their ownership of disputed mineral royalties; (2) an accounting of all mineral royalties paid to the Levee Board after June 29, 1984; and (3) a money judgment for the royalties that the Levee Board collected. After the Levee Board produced an accounting of revenues received from the subject property, the state trial court granted the landowners' motion for summary judgment and ordered the Levee Board to pay $2,853,358.44.[13]  When the Levee Board refused to pay the royalties in spite of this judgment, the landowners unsuccessfully sought writs of mandamus and seizure in the state court.

In a further attempt to collect the royalties due, the landowners filed suit in federal court, claiming that the Levee Board's refusal to pay the judgment was an unconstitutional taking. The district court subsequently dismissed the suit on Eleventh

---

[12]294 F.3d 684.

[13]Vogt v. Bd. of Comm'rs of the Orleans Levee Dist., 738 So. 2d 1142 (La. Ct. App. 4th Cir. 1999), writ denied, 748 So. 2d 1166 (La. 1999).

Amendment immunity grounds.[14]

On appeal, after determining that the Levee Board was not immune from suit, we rejected the Levee Board's argument that the landowners' "property" – in the form of a judgment – had not been taken and that the landowners' takings claim was nothing more than a suit to enforce a judgment against the Levee Board. Although we expressed no opinion on the ultimate outcome of the takings claim, we found "no support for the [L]evee [B]oard's premise that a decree of the Louisiana courts somehow converted private property (the mineral royalties) into public funds subject to an unenforceable lien."[15]

Unlike the Vogt I plaintiffs, the landowners in the instant case asserted a takings claim in state court based on the withheld mineral royalties. In addition, instead of litigating their claims, as the landowners in Vogt I chose to do, the landowners here entered into a comprehensive settlement agreement to "compromise" and "settle all claims," which encompasses their takings claim, against the Levee Board.[16] In exchange, the

---

[14]Vogt v. Bd. of Comm'rs of the Orleans Levee Dist., No. Civ.A. 00-3195, 2001 WL 664580 (E.D. La. June 12, 2001).

[15]Vogt I, 294 F.3d at 697 (citation omitted).

[16]The description of the claims covered by the Settlement Agreement expressly included all claims asserted against the Levee Board in the state litigation:

Plaintiffs' Counsel, the Levee Board, and the Participating Class Plaintiffs intend that payments made by the Levee Board under this Settlement Agreement will fully and completely settle any and all Released Claims against the Levee Board upon

9

landowners specifically agreed to accept $2,318,263.72 immediately and another $18,767,145.26 "as and if funds are appropriated thereof."

In an attempt to avoid the conclusion that, after they compromised their takings claim, they were relegated to a suit to enforce the Settlement Agreement and Consent Judgment, the landowners rely on a provision in the Settlement Agreement stating that if the Levee Board failed to pay at least $2,600,000 per year, the landowners could exercise their rights to enforce the Consent Judgment "in accordance with this Agreement and law." The landowners correctly point out that the Levee Board did not pay the requisite $2,600,000 per year. But, the landowners' argument ignores the provision's reference to the "Agreement." Importantly, under the terms of the Settlement Agreement, the Consent Judgment

---

full and final payment. The claims of Participating Class Plaintiffs against the fully and completely funded Settlement Fund shall be the exclusive remedy of all Participating Class Plaintiffs against the Levee Board with respect to the Released Claims.

The term "Released Claims(s)" is defined in the Settlement Agreement as:

any liability of the Levee Board to the Participating Class Plaintiffs; their successors, assigns, or beneficiaries, and any person or entity entitled to assert any claim on behalf of any Participating Class Plaintiff, or any person or entity who or which derives or obtains any right from or through any Participating Class Plaintiff, arising out of, related to or connected in any way with the Class Action. The term "Released Claim(s)" expressly includes, without limitation, any and all such claims, demands, liens, debts, obligations and causes or rights of action against the Levee Board for damages and for compensation from any source including but not limited to leases, oil and gas revenues.

Settlement Agreement, ¶ 2.16 (emphasis added).

10

was to be paid only "as and if funds are appropriated thereof." The Settlement Agreement contained no provision providing that the agreement was rendered invalid if the Levee Board failed to pay the yearly $2,600,000. Indeed, the Consent Judgment specifically stated that the state court was to retain jurisdiction over the matter "for the purpose of effectuating, enforcing and implementing" its judgment.

Because we conclude that, by entering into the Settlement Agreement, the landowners compromised their takings claim against the Levee Board, and thus, extinguished any takings claim they may have had, the landowners' only legal recourse is to enforce their rights under the Settlement Agreement and Consent Judgment. Accordingly, the district court erred in rendering summary judgment in favor of the landowners.[17] We, therefore, reverse the judgment of the district court and render judgment in favor of the Levee Board, dismissing the landowners' takings claim with prejudice.

### III. MOTION TO VACATE SEIZURE ORDERS

The Levee Board argues that La. Const. art. XII, § 10(C) and La. Rev. Stat. Ann. § 13:5109(B)(2) prohibit the landowners from seizing any Levee Board assets, described as "public property" or "public funds," to satisfy their judgment against the Levee Board. The district court denied the Levee Board's motion to vacate the

---

[17]Because we conclude that the instant suit should be dismissed on the ground that the landowners fail to state a takings claim, we need not address the Levee Board's additional arguments concerning res judicata, prescription, and class certification.

11

seizure orders, concluding that Louisiana's anti-seizure provisions did not apply to the judgment against the Levee Board.

Because we conclude that the district court erred in rendering judgment in favor of the landowners, we vacate the writs of seizure issued by the district court in execution of that judgment.[18]

## IV.   THE STATE'S MOTION TO INTERVENE

In the district court, the State filed a motion to intervene pursuant to, <u>inter</u> <u>alia</u>, Fed. R. Civ. Proc. 24 for the limited purpose of enforcing Louisiana's anti-seizure provisions found in La. Const. art. XII, § 10(C) and La. Rev. Stat. Ann. § 13:5109(B)(2).[19]   The district court denied the State's motion, concluding that the State did not have an unconditional right to intervene, and that any interest the State had was adequately represented by the existing parties.

Fed. R. Civ. Proc. 24(a) allows certain interested parties to intervene as of right.   The State relied on both subsections of Rule 24(a) in its motion to intervene.   We review the district court's ruling denying intervention of right de novo.[20]

---

[18]Since we vacate the writs of seizure on the ground that the underlying judgment is erroneous, we do not decide whether the district court erred in concluding that Louisiana's anti-seizure provisions do not apply to the judgment against the Levee Board.

[19]The State also sought to intervene pursuant to La. Const. art. IV, § 8.  Article IV, Section 8 merely defines the powers of the Attorney General, providing that "[a]s necessary for the assertion or protection of any right or interest of the state," the Attorney General shall have the authority, <u>inter alia</u>, "to intervene in any civil action or proceeding." Article IV, Section 8 confers no right on the Attorney General to intervene in this matter.

[20]<u>Edwards v. City of Houston</u>, 78 F.3d 983, 995 (5th Cir. 1996) (en banc).

12

A. INTERVENTION OF RIGHT PURSUANT TO FED. R. CIV. PROC. 24(a)(1)

Fed. R. Civ. Proc. 24(a)(1) allows intervention of right "when a statute of the United States confers an unconditional right to intervene." The State argues that 28 U.S.C. § 2403(b) confers upon it an unconditional right to intervene in the instant suit because the constitutionality of La. Const. art. XII, § 10(C) and La. Rev. Stat. Ann. § 13:5109(B)(2) were called into question by the landowners' efforts to seize public property and funds.[21]

We agree with the district court that this case does not challenge or question the constitutionality of La. Const. art. XII, § 10(C) or La. Rev. Stat. Ann. § 13:5109(B)(2), and thus, 28 U.S.C. § 2403(b) does not provide the State an unconditional right to intervene. In granting the landowners' requests for writs of seizure and subsequently denying the Levee Board's motion to vacate such writs, the district court merely found the relevant provisions inapplicable to the instant case, thus raising only questions of the proper interpretation of Louisiana law, and not its constitutionality.

---

[21]28 U.S.C. § 2403(b) provides, in pertinent part:

In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn into question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

13

The district court correctly concluded that 28 U.S.C. § 2403(b) does not provide the State an unconditional right to intervene.

B. INTERVENTION OF RIGHT PURSUANT TO FED. R. CIV. PROC. 24(a)(2)

To intervene of right under Fed. R. Civ. Proc. 24(a)(2), an applicant must meet four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[22]

Failure to satisfy any one requirement precludes intervention of right.[23]

The landowners make two arguments in support of the district court's denial of the State's motion to intervene of right under Fed. R. Civ. Proc. 24(a)(2): (1) the motion was untimely; and (2) the State's interests were adequately represented by the Levee Board. Because we conclude that the State's interests were adequately represented by the Levee Board, we do not consider the timeliness issue.

The burden of establishing inadequate representation is on the

---

[22]New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir. 1984) (quoting Int'l Tank Terminals, Ltd. v. M/V Acadia Forest, 579 F.2d 964, 967 (5th Cir. 1978)).

[23]Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994).

14

applicant for intervention.[24]  This burden is "minimal" and "is satisfied if the applicant shows that representation of his interest 'may be' inadequate . . . ."[25]  However, "it cannot be treated as so minimal as to write the requirement completely out of the rule."[26]  In addition, "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance."[27]

The State argues that it is not seeking "the same ultimate objective" as the Levee Board because its objective is more expansive in that the State is seeking to ensure that Louisiana's anti-seizure provisions are uniformly applied to prevent the seizure of public property and funds in satisfaction of any judgment, and not merely a judgment against the Levee Board. Nevertheless, even assuming that the State's interest is broader than that of the Levee Board, the more narrow issue regarding execution of the judgment against the Levee Board is the only matter currently before us.  Thus, the Levee Board and the State

---

[24]See Hopwood v. Texas, 21 F.3d 603, 605 (5th Cir. 1994).

[25]Edwards, 78 F.3d at 1005 (citing Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)).

[26]Id. at 1005 (citation and internal quotations omitted).

[27]Kneeland v. Nat'l Collegiate Athletic Ass'n, 806 F.2d 1285, 1288 (5th Cir. 1987) (citation omitted).

have the same ultimate objective in this case.

The State does not allege collusion, nonfeasance, or adversity of interest. The State only asserts that the Levee Board cannot adequately represent its interests because it is now dissolved[28] and, even when it was in existence, it had no juridical authority to represent the State because it was a political subdivision and not an agency of the State. Contrary to the State's assertions, the State concedes that the Levee Board "has very able and persuasive counsel." Furthermore, even assuming that the Levee Board does not have the "juridical" authority to represent the State, when evaluating a motion to intervene, our concern is whether the Levee Board adequately represents the State's interests, and not whether the Levee Board is actually representing the State as a party (which the Levee Board does not purport to do). In addition, because we conclude that it was error for the district court to render judgment against the Levee Board, we do not reach the seizure issue which is the concern of the State.

---

[28]Acts 1 and 43 of the First Extraordinary Session of 2006 of the Louisiana Legislature together with the state constitutional amendments adopted by the Louisiana voters collectively provided that, effective January 1, 2007, the Orleans Levee District is to be governed by the newly-created boards of commissioners of the Southeast Louisiana Flood Protection Authority - East and the Southeast Louisiana Flood Protection Authority - West, except that "non-flood control assets" of the Orleans Levee District "shall be managed and controlled by the state, through the division of administration," and, for such purposes, "the division of administration shall be the successor to the board of commissioners of such levee district;" and that any previously-filed legal proceeding to which the Orleans Levee District is a party "shall retain its effectiveness and shall be continued in the name of the district." See La. Const. art. VI, §§ 38-38.1 (1974); La. Rev. Stat. Ann. §§ 38:291(K), 330.1(A)-(B), 330.2, 330.3(A)(1)(a), 330.10, 330.12.

16

The district court properly concluded that the Levee Board adequately represents the State, and thus, we affirm the court's order denying the State's motion to intervene as a matter of right pursuant to Fed. R. Civ. Proc. 24(a)(2).[29]

## V. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and RENDER judgment for the Levee Board, dismissing the landowners' takings claim with prejudice at the landowners' cost. We also VACATE the writs of seizure and AFFIRM the district court's denial of the State's motion to intervene.

---

[29]In its Reply Brief, the State also argues that it should be allowed to intervene on grounds of permissive intervention under Fed. R. Civ. Proc. 24(b). This argument does not appear to have been made to the district court. Although the State identified Fed. R. Civ. Proc. 24(b) as the authority for its motion to intervene, it quoted the language of Fed. R. Civ. Proc. 24(a), and thus, the district court evaluated the State's motion only on the basis of intervention of right. The State's permissive intervention argument also did not appear in its opening brief. We will not consider a claim raised for the first time in a reply brief. See Price v. Roark, 256 F.3d 364, 369 n.2 (5th Cir. 2001).