**ENTERGY GULF STATES LOUISIANA, L.L.C.; Entergy Arkansas, Incorporated, Plaintiffs–Appellees**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant**

**Sierra Club, Movant–Appellant.**

**No. 15–30397.**

United States Court of Appeals, Fifth Circuit.

March 17, 2016.

Debra J. Jezouit, Megan Heuberger Berge, Esq., David A. Super, Baker Botts, L.L.P., Washington, DC, Kelly Murphy McQueen, Little Rock, AR, Aaron Michael Streett (argued), Baker Botts, L.L.P., Houston, TX, for Plaintiffs–Appellees.

Joshua Smith (argued), Sanjay Narayan, Sierra Club Environmental Law Program, San Francisco, CA, Machelle Rae Lee Hall, Esq., New Orleans, LA, for Movant–Appellant.

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This appeal concerns a reverse-Freedom of Information Act ("FOIA") suit brought by Plaintiffs–Appellees Entergy

Gulf States Louisiana, L.L.C. and Entergy Arkansas, Inc. (collectively, "Entergy") against Defendant United States Environmental Protection Agency ("EPA") to prevent the disclosure of documents requested by Movant–Appellant Sierra Club ("Sierra Club") via a FOIA request. Sierra Club appeals the district court's decision denying its motion to intervene of right in the reverse-FOIA suit. For the reasons below, we reverse.

## I. BACKGROUND

In November 2011 and January 2013, Sierra Club submitted two separate FOIA requests to EPA, requesting documents provided by Entergy to EPA pursuant to the Clean Air Act that relate to three of Entergy's power plants. When Entergy provided these documents to EPA, Entergy designated many of the documents as containing Entergy's confidential business information ("CBI") subject to FOIA Exemption 4. FOIA Exemption 4 exempts from public disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). After receiving Sierra Club's FOIA requests, EPA provided Entergy with the opportunity to substantiate its CBI claim. In June and July 2014, EPA issued "final determination" letters in regard to the November 2011 and January 2013 FOIA requests, respectively. In those letters, EPA found that none of the 21,685 pages of requested documents contain Entergy CBI and thus none satisfy FOIA Exemption 4 on that basis alone. However, EPA also found that approximately 18,000 pages out of the 21,685 pages of documents contain third-party contractual information that may be subject to confidential treat-

ment under FOIA Exemption 4. Therefore, EPA stated it "will temporarily maintain this third-party contract information as CBI" until it makes the third-party CBI determination or until the third parties waive their confidentiality interests. EPA also stated that it "will release the approximately [3,685] [1] pages of documents, which do not include the third-party contract documents," to Sierra Club. EPA went on to describe the process required to make the third-party CBI determination, which includes identifying all implicated third parties, notifying them, and affording them an opportunity to comment on whether the information is CBI. EPA stated that it "may need to coordinate with Entergy to ensure that [EPA] identifies all third-parties with a proprietary business interest in this information." Lastly, EPA stated that it "will endeavor to resolve the third-party contract claims within the next 12 to 18 months."

█ On August 11, 2014, Entergy filed the underlying reverse-FOIA suit against EPA in the United States District Court for the Eastern District of Louisiana. A reverse-FOIA suit is one in which "a plaintiff seeks to prevent a governmental agency from releasing information to a third party in response to the third party's request for information under FOIA." *Doe v. Veneman,* 380 F.3d 807, 810 (5th Cir.2004). In the reverse-FOIA suit, Entergy seeks a reversal of EPA's determination that the requested documents do not contain Entergy CBI, a declaration that the documents are exempt from public disclosure under FOIA Exemption 4, and an injunction prohibiting EPA from disclosing the documents.

---

1. Approximately 3,500 pages applied to the November 2011 FOIA request, while approximately 185 pages applied to the January 2013 request, for a total of approximately 3,685 pages.

On August 26, 2014, Entergy and EPA filed a joint motion to stay this case for thirty days to "allow the parties to discuss the disputed documents and potential ways to streamline the litigation moving forward," which the district court granted. In conjunction with the motion to stay, EPA agreed to not release any of the documents until the case has been resolved on the merits, which thereby mooted Entergy's previously filed motion for preliminary injunction. On September 29, 2014, Entergy and EPA filed a joint motion to "continue to stay the case until the completion of the EPA administrative review process" in order "to allow EPA to render a determination on the confidentiality of the third-party documents." Entergy and EPA agreed that "staying the case pending resolution of EPA's administrative review would serve the interests of judicial efficiency because it would provide the parties with the time necessary to define (and potentially narrow, significantly) the universe of documents and information at issue in the case." Sierra Club opposed continuation of the stay, alleging it would be prejudiced by delayed disclosure of the documents. The district court granted continuation of the stay, noting the parties' position that "continuation of the stay will allow them to efficiently determine which documents remain at issue in this case." As required by the district court, Entergy and EPA submitted a status report on November 3, 2014, wherein they again jointly requested continuation of the stay because the EPA administrative review process was only approximately twenty percent complete. Sierra Club submitted a status report of its own, wherein it opposed staying the entire case and instead requested that the case be bifurcated. Specifically, Sierra Club agreed to continuation of the stay as to the approximately 18,000 pages of documents that may contain third-party CBI, but Sierra Club opposed continuation of the stay as to the approximately 3,685 pages of documents that allegedly had already been determined to not contain third-party CBI. The district court granted Entergy and EPA's request to continue to stay the entire case, "find[ing] that allowing [Entergy] and [EPA] to continue amicably reviewing the disputed documents to narrow the scope of litigation is preferred over the piecemeal approach suggested by [Sierra Club]." Since then, the parties have regularly updated the district court on the status of the third-party CBI determination process. EPA has informed the district court that it has "need[ed] Entergy's cooperation to identify the[ ] third parties" and that Entergy has been "reviewing th[e] material to confirm that [EPA is] correct in what [it has] identified." Currently, the case is still stayed.

In the meantime, on September 11, 2014, Sierra Club filed a motion to intervene of right, alleging its interests will not be adequately represented by EPA. In the alternative, Sierra Club sought permissive intervention. Entergy and EPA opposed intervention. The magistrate judge granted the motion to intervene of right on October 15, 2014, but the district court reversed the magistrate judge's decision and denied the motion to intervene on March 4, 2015. Sierra Club filed this interlocutory appeal of the district court's decision denying its motion to intervene of right. Entergy has participated in this appeal, but EPA has not.

## II. ANALYSIS

A district court's decision denying intervention of right is reviewed de novo. *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 577 (5th Cir.2007).

 Sierra Club seeks to intervene of right pursuant to Federal Rule of Civil Procedure 24(a)(2). To intervene pursuant to Rule 24(a)(2), an applicant must satisfy four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Id.* at 578. "Failure to satisfy any one requirement precludes intervention of right." *Id.* The inquiry under Rule 24(a)(2) "is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and "intervention of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Hous.*, 78 F.3d 983, 999 (5th Cir.1996). The rule "is to be liberally construed," with "doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir.2009).

Entergy does not dispute that Sierra Club satisfies the first three requirements to intervene of right. At issue is the fourth requirement: whether Sierra Club's interest is inadequately represented by EPA.

 "The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'" *Brumfield v. Dodd,* 749 F.3d 339, 345 (5th Cir.2014) (quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir.1994)). The applicant "need not show that the representation by existing parties will be, for certain, inadequate." *Id.* Rather, the burden "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Haspel,* 493 F.3d at 578 (citation omitted). However, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.* Therefore, "there are two presumptions of adequate representation." *Brumfield,* 749 F.3d at 345. "The first arises where one party is a representative of the absentee by law." *Id.* "The second presumption 'arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit,' in which event 'the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption.'" *Id.* (quoting *Edwards,* 78 F.3d at 1005).

 In this case, there is no suggestion that EPA is a representative of Sierra Club by law, so the first presumption does not apply.[2] Sierra Club and Entergy's

---

**2.** Relying on this Court's statement in *Hopwood* that "where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required," Entergy claims that because EPA is a governmental agency, a much stronger showing of inadequacy is required. *Hopwood v. Texas,* 21 F.3d 603, 605 (5th Cir.1994). However, in *Hopwood,* the party was the state of Texas—not a governmental agency—and this Court in *Hopwood* immediately proceeded to state that "[i]n a suit involving a matter of *sovereign interest,* the State is presumed to represent the interests of all of its citizens." *Id.* (emphasis add-

ed). Subsequently, in *Edwards,* this Court explained that "our jurisprudence has created two presumptions of adequate representation. First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises.... This presumption, and the heightened showing required to overcome it, *is restricted, however, to those suits involving matters of sovereign interest.*" *Edwards,* 78 F.3d at 1005 (emphasis added) (citing *Hopwood,* 21 F.3d at 605) (other citations omitted). Moreover, this Court has not required a

dispute is whether the same-ultimate-objective presumption applies, and if so, whether there is sufficient adversity of interest or nonfeasance to overcome the presumption.[3]

 Assuming arguendo that the same-ultimate-objective presumption applies, we turn to whether Sierra Club and EPA have adversity of interest and thus the presumption of adequate representation is overcome. "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir.2015).[4] In *Texas*, this Court held the proposed intervenors showed adversity of interest, and were accordingly entitled to intervene, because they "specif[ied] the particular ways in which their interests diverge[d] from the [party's]" and then "identif[ied] the particular way in which these divergent interests have impacted the litigation." *Id.* at 663.

 Sierra Club contends it and EPA have divergent interests regarding the timing of document disclosure, as evidenced by their opposing positions on stay and bifurcation. Specifically, Sierra Club claims it is interested in prompt disclosure of the requested documents, while EPA is interested only in eventual disclosure. In addition, Sierra Club contends that it does not share EPA's interests in protecting third-party CBI and cooperating with Entergy.

As we explained in detail supra, EPA agreed to not release any of the requested documents to Sierra Club until this case, which involves whether the documents contain Entergy CBI, has been resolved. Thus, the sooner this case is resolved, the sooner Sierra Club will potentially receive the documents that it seeks. Nonetheless, EPA advocated for a stay of the entire case until EPA determines whether the documents contain third-party CBI. At EPA's request, Entergy is assisting EPA in identifying documents that contain third-party CBI. Because any documents determined to contain third-party CBI will not be released to Sierra Club even if they do not contain Entergy CBI, Sierra Club will potentially receive fewer documents due to EPA's or Entergy's identification of third-party CBI. Initially, Sierra Club opposed a stay, alleging it would be prejudiced by delayed document disclosure. Subsequently, Sierra Club requested bifurcation in a manner that would continue the stay as to some documents but not as to others. EPA opposed bifurcation. Based on these facts, we find that Sierra Club's interests diverge from EPA's interests regarding stay of the case, bifurcation of the case, protection of third-party CBI, and cooperation with Entergy to identify third-party CBI.

 Entergy does not seem to dispute that Sierra Club and EPA have divergent interests. Rather, Entergy contends that the matters of stay and bifurcation concern mere litigation tactics that are within the district court's broad discretion to regulate and do not warrant intervention. As to protection of third-party CBI and cooperation with Entergy, Entergy contends that

---

stronger showing of inadequacy in other cases where a governmental agency is a party. *See, e.g., Doe v. Glickman*, 256 F.3d 371, 380–81 (5th Cir.2001). Accordingly, because EPA is a governmental agency and not a sovereign interest, a stronger showing of inadequacy is not required.

3. Sierra Club does not contend the presumption is overcome because of collusion.

4. This recent *Texas* case was the first time this Court clearly explained the meaning of "adversity of interest."

EPA is timely fulfilling the legal requirement of identifying third-party CBI, that Entergy's assistance in identifying third-party CBI is necessary, and that such third-party CBI interests and cooperation do not have any material bearing on the Entergy CBI issue in this case. In short, Entergy seems to contend that these divergent interests are not germane to the case. We disagree.

Although EPA is legally required to undergo the third-party CBI determination process, determination of the Entergy CBI issue in this case could have proceeded simultaneously and separately. Instead of allowing the two separate determinations to proceed simultaneously, EPA requested to stay the entire case until completion of the entire third-party determination. EPA also opposed bifurcating the case so that any documents for which the third-party CBI determination allegedly had been completed could be immediately adjudicated, while adjudication of any documents for which the third-party CBI determination had not been completed could continue to be stayed. EPA initially estimated that the third-party determination process would take twelve to eighteen months to complete. When the district court denied Sierra Club's motion to intervene, the case had been stayed for over six months. Currently, the case has been stayed for over eighteen months. Thus, had the case (or a portion of the case) not been stayed, then the case (or a portion of the case) could have been resolved significantly sooner than it will be. Moreover, it is undisputed that a purpose of the stay is to potentially "narrow, significantly[,]" the amount of documents at issue in the case.

In other words, if EPA determines during the stay that a document contains third-party CBI, Entergy will remove that document from the case and no longer litigate whether EPA correctly determined that the document does not contain Entergy CBI. By advocating to stay the case in order to narrow the case, the parties made the stay impact the case beyond just delaying its resolution. Although stay and bifurcation in some cases might concern mere litigation tactics, in this unique situation, stay and refusal to bifurcate will result in a significantly delayed and likely narrower ruling. For these reasons, we find that Sierra Club's and EPA's divergent interests regarding stay and bifurcation are germane to this particular case.[5]

Likewise, because this case has been stayed until EPA completes the third-party CBI determination process, the third-party CBI determination process is delaying resolution of the case. Further, because any documents containing third-party CBI will be removed from this case, EPA's protection of third-party CBI and Entergy's assistance in identifying third-party CBI will likely result in a smaller number of documents being litigated in the case. Although an agency's protection of third-party CBI and cooperation with a regulated entity to identify third-party CBI might not always impact a suit involving only the regulated entity's CBI, in this unique situation, EPA's protection of third-party CBI and cooperation with Entergy to identify third-party CBI will result in a significantly delayed and likely narrower ruling as to Entergy CBI. The fact that EPA is legally required to under-

---

5. Of course, in this appeal we are only dealing with Sierra Club's right to intervene so that it can have a voice on matters before the district court. We are not dealing with the merits of stay, bifurcation, or any other matter before the district court other than inter-

vention. Therefore, our finding should in no way be construed as opining on the merits of stay or bifurcation either in the past or in the future once Sierra Club is allowed to intervene.

take the third-party CBI determination process and allegedly needs Entergy's assistance to do so does not mean that these interests cannot impact the case; nor does this fact mean that these interests cannot provide a basis for intervention when Sierra Club's interests diverge from these interests. For these reasons, we find that Sierra Club's and EPA's divergent interests regarding protection of third-party CBI and cooperation with Entergy to identify third-party CBI are germane to this particular case.

Because Sierra Club's interests diverge from EPA's interests in manners germane to this case, adversity of interest exists between Sierra Club and EPA.[6] Because adversity of interest exists, any same-ultimate-objective presumption of adequate representation is overcome, and the requirement that Sierra Club's interests be inadequately represented by EPA is satisfied.[7] Accordingly, Sierra Club is entitled to intervene of right.

### III. CONCLUSION

For the foregoing reasons, Sierra Club is entitled to intervene of right. REVERSED and REMANDED.

EDITH H. JONES, Circuit Judge dissenting.

Although I agree with the majority opinion's careful restatement of applicable law in this intervention-of-right appeal, I cordially disagree with the conclusion that Sierra Club may intervene. As Sierra Club acknowledged in its brief, it seeks the same "ultimate result" as EPA, disclosure

of all documents relevant to the Club's FOIA request that are not statutorily protected from disclosure as Entergy's or third-parties' confidential business information. Sierra Club simply wants disclosure to proceed faster, or even piecemeal. The district court, rightly in my view, regarded these concerns as bearing solely on litigation tactics, not on a fundamental adversity of interests between EPA and Sierra Club. I respectfully dissent from the conclusion that Sierra Club overcame the presumption of adequate representation.

Nevertheless, I understand the majority's assessment that timing is important to the operation of FOIA's disclosure regime. Whether Sierra Club's participation as a party to the litigation will foster or impede faster resolution of the case is largely in the district court's hands now. The panel opinion assuages some of my concern with its footnote 5, which preserves the district court's discretion in case management by noting that, "[O]ur finding should in no way be construed as opining on the merits of stay or bifurcation either in the past or in the future once Sierra Club is allowed to intervene."

---

**6.** Because we find that Sierra Club's and EPA's interests regarding stay, bifurcation, protection of third-party CBI, and cooperation with Entergy to identify third-party CBI are both divergent and germane to the case, we decline to address other alleged divergent interests.

**7.** Because the same-ultimate-objective presumption is overcome due to adversity of interest, we decline to address whether this presumption is overcome due to nonfeasance.