# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2022

Lyle W. Cayce
Clerk

No. 21-11271

Sid Miller, *on behalf of himself and others similarly situated*; Greg Macha; James Meek; Lorinda O'Shaughnessy; Jeff Peters,

*Plaintiffs—Appellees*,

*versus*

Tom Vilsack, *in his official capacity as* Secretary of Agriculture,

*Defendant—Appellee*,

*versus*

Federation of Southern Cooperatives/Land Assistance Fund,

*Movant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-595

Before Southwick, Haynes, and Higginson, *Circuit Judges*.

PER CURIAM:*

Appellant Federation of Southern Cooperatives (the "Federation") moved to intervene in a class action challenging the constitutionality of § 1005 of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4. The district court denied the motion. For the following reasons, we REVERSE and REMAND.

## I.    Background

The Secretary of the United States Department of Agriculture ("USDA") is authorized under § 1005 to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" to pay off the disadvantaged farmer or rancher's loans "made" or "guaranteed by the Secretary." ARPA § 1005(a)(2), 135 Stat. at 12–13. The term "socially disadvantaged farmer or rancher" ("SDFR") is defined as "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which, in turn, means that the members of the group "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6). Per USDA interpretation, SDFR includes (but is not limited to): "American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos." Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329, 28,330 (May 26, 2021).

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-11271

Sid Miller, a white farmer excluded from the SDFR designation (who describes his ancestry as "overwhelmingly white"),[1] filed a class action lawsuit against the Secretary, claiming that USDA violated Title VI of the Civil Rights Act of 1964 and the U.S. Constitution "by excluding individuals and entities from the benefit of federal programs on the grounds of race, color, and national origin." The district court certified the class and granted a preliminary injunction to enjoin the Secretary from administering § 1005.

The Federation, "a nonprofit cooperative association of Black farmers, landowners, and cooperatives,"[2] filed a motion to intervene as a defendant in this action. The organization argued it was entitled to intervention as a matter of right under Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention under Rule 24(b). Both the Secretary and Plaintiffs opposed the motion to intervene as a matter of right, arguing that the Federation failed to show that the Government inadequately represented the Federation's interest. Only Plaintiffs opposed permissive intervention.

The district court denied the Federation's motion to intervene on both grounds. *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 6129207, at

---

[1] Miller is the Agriculture Commissioner for the State of Texas but stated in the class action complaint that he is "suing in his capacity as a private citizen[] and not on behalf of the State of Texas or the Texas Department of Agriculture."

[2] According to the Executive Director of the Federation, the organization "serves its members through advocacy, technical assistance, and support services." It is also a "unique" organization "because it has a cooperative membership as well as a land assistance fund." Here, the Federation's minority farmer members, who are § 1005 beneficiaries or applicants, seek to present evidence of ongoing and current discrimination against them by USDA—the agency administering the loan assistance program at issue.

No. 21-11271

*3 (N.D. Tex. Dec. 8, 2021).[3]  The Federation timely appealed, and we granted the motion to expedite.

## II.     Jurisdiction and Standard of Review

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3).  As to the denial of the motion to intervene as a matter of right, we have jurisdiction over this appeal under 28 U.S.C. § 1291 and review this denial de novo, *Edwards v. City of Houston*, 78 F.3d 983, 992, 995 (5th Cir. 1996) (en banc).  As to the denial of the permissive intervention motion, we only have "provisional jurisdiction" and review for a clear abuse of discretion.  *Id.* at 992, 995.  Under this deferential standard, we will reverse the district court's decision only if "extraordinary circumstances" are present.  *St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969, 973 (5th Cir. 2019) (quotation omitted).

## III.     Discussion

On appeal, the Federation argues that the district court erred in denying its motion to intervene based on intervention as a matter of right or (alternatively) permissive intervention.  We agree that the court erred in denying intervention as a matter of right, mooting the permissive intervention issue.

To prevail on a motion to intervene as a matter of right, an applicant must meet four requirements:

> (1) The application must be timely; (2) the applicant must have
> an interest relating to the property or transaction that is the
> subject of the action; (3) the applicant must be so situated that

---

[3] Instead, the district court granted the Federation leave to file a brief as amicus curiae. *Miller*, 2021 WL 6129207, at *3.

the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quotation omitted); Fed. R. Civ. P. 24(a)(2). Nevertheless, a Rule 24(a) inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . measured by a practical rather than technical yardstick." *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quotation omitted). In line with this flexibility, we have held that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quotation omitted). Therefore, even though "the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed," *id.* at 656 (quotation omitted), "with doubts resolved in favor of the proposed intervenor," *Entergy*, 817 F.3d at 203 (internal quotation marks and citation omitted).

Because the parties do not dispute that the Federation can meet the first three prongs of the Rule 24(a) inquiry, we limit our analysis to the fourth prong—whether the Federation's interest is adequately represented by the Secretary. We have held that "[t]he applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). However, "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Texas*, 805 F.3d at 661 (quotation omitted). Therefore, we have "created two presumptions of adequate representation that intervenors must overcome in appropriate cases." *Id.* (internal quotation marks and citation omitted). The first presumption applies "when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* (internal quotation

marks and citation omitted).  The second presumption applies in cases where a party "is presumed to represent the interests of all of its citizens," *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam), such as "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]," *Texas*, 805 F.3d at 661 (quotation omitted).  This presumption is limited, however, to "suits involving matters of sovereign interest." *Edwards*, 78 F.3d at 1005.

The district court did not explicitly mention these two presumptions, but it noted that "where the party whose representation is said to be inadequate is a governmental agency," the necessary showing of inadequacy needed to be "much stronger." *Miller*, 2021 WL 6129207, at *2 (quotation omitted).  We disagree with this conclusion because the second presumption is not in play in this case, so we need not apply it.[4]

Turning to the first presumption, in order to overcome it, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Texas*, 805 F.3d at 661–62 (quotation omitted).  Specifically, "to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662.

---

[4] Although *Hopwood* mentioned "governmental agency" in passing, it involved a case against the State of Texas, not a governmental agency, thus the question of whether a governmental agency can assert a "matter of sovereign interest" was not the issue. *See* 21 F.3d at 605.  Such a question was in play in *Entergy*, which concluded that because the EPA was "a governmental agency and not a sovereign interest," the second presumption was inapplicable. *See* 817 F.3d at 203 n.2.  This case is more like *Entergy*; it involves assistance with loans by a governmental agency, not a sovereign interest.

Given the lack of "sovereign interest" here, we need not address the exact circumstances of when a "sovereign interest" might apply in all instances.  Nor do we address when (or if) a governmental agency might be implicated as a sovereign interest.  Instead, we simply conclude that *Entergy*'s holding applies to the analogous agency at issue here.

No. 21-11271

Undoubtedly, the Secretary and the Federation share the "same ultimate objective"—upholding the constitutionality of § 1005. Therefore, the relevant inquiry is whether the Federation can "show adversity of interest" by demonstrating that its interests diverge from the Secretary's "in a manner germane to the case." *Id.* We conclude that the Federation has made such a showing.

Relevant here, the Secretary maintains that he has provided "evidence of discrimination within the last decade" and discussed reports "highlighting how *past* discrimination continues to disadvantage minority farmers today." However, the Federation is making a meaningfully different argument. Instead of focusing on how *past* discrimination continues to have "lingering effects,"[5] the Federation argues that USDA is *continuing* to actively discriminate against its members. Therefore, the Federation has an interest in taking a position that not only *directly* conflicts with the Secretary's position, but also potentially exposes the agency to liability. That interest is "germane to the case" because evidence of continued discrimination may be highly relevant to proving a "compelling governmental interest." *See Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1275, 1279 (M.D. Fla. 2021) (describing, in a § 1005 case, how "evidence of continued discrimination" may be "crucial"). Yet, this argument is not one the Secretary can reasonably be

---

[5] Indeed, the record demonstrates that the Secretary's position is "*not* that the USDA is continuing to discriminate against minorities"; rather *past* discrimination "has led to . . . lingering effects" that work against minorities. Because the Secretary maintains that the USDA is no longer discriminating against minorities, which is something the Federation disputes, that is strong evidence that the two entities are "staking out a position significantly different" from each other. *See Brumfield*, 749 F.3d at 346 (observing that the government entity conceded an issue that the parent intervenors disagreed with).

7

No. 21-11271

expected to adopt or support: a U.S. Secretary would likely heartily deny that their agency is *currently* discriminating against people based upon race.[6]

In light of this adversity of interest, we conclude that the Federation has successfully rebutted the first presumption. Given our "broad policy favoring intervention," we hold that the Federation has met its "minimal" burden demonstrating inadequate representation (though we limit this holding to the facts of this case). *See Sierra Club*, 18 F.3d at 1207 (quotation omitted).[7] We therefore REVERSE the district court's denial of intervention as a matter of right and REMAND with the directive to permit the Federation's intervention.

---

[6] It also stands to reason that, if given the opportunity to conduct discovery as a party, the Federation would seek evidence demonstrating current discrimination by the USDA against its members. It is highly unlikely the Secretary would put forth such evidence in the absence of the Federation's intervention.

[7] The Federation also argues that USDA letters sent to its members disclosing the agency's intent to accelerate the members' loans demonstrate a divergence of interest. Whether or not this evidence is germane to the case, as to the first presumption, it provides additional support to overcome the Federation's "minimal" burden. *Sierra Club*, 18 F.3d at 1207 (quotation omitted).