# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2022

Lyle W. Cayce
Clerk

No. 21-20617

---

Fredric A. Guenther; Walton Fujimoto, Les Owen

*Plaintiffs—Appellees*,

*versus*

BP Retirement Accumulation Plan; BP Corporation
North America, Incorporated,

*Defendants—Appellees*,

*versus*

Michael Press,

*Movant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-995

---

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:

Appellees have been adversaries in a protracted class action for over six years, based on disputed events occurring more than thirty years ago. After almost five years of litigation, and on the eve of class certification,

No. 21-20617

Appellant, who has separately been engaged in an action against Defendants-Appellees, moved to intervene. Despite their differences, Appellees agreed that this motion should be denied. The district court subsequently denied Appellant's motion, and this appeal followed. On appeal, Appellees continue to jointly oppose Appellant's intervention. For the reasons stated below, we AFFIRM.

## I.

In 1987, a subsidiary of British Petroleum, now known as BP Corporation North America Inc. ("BP America," a Defendant-Appellee in this action), acquired Standard Oil of Ohio ("Sohio"). Prior to the acquisition, Sohio employees were members of a Sohio sponsored defined benefit retirement plan (the "Sohio Plan"), which calculated its pension distributions using a formula based on an employee's earnings history, tenure of service, and age. Therefore, once employees contributed to the Sohio Plan, Sohio bore the entirety of the investment risk as distribution amounts were based on a predetermined formula that did not account for market performance.

At the time of the acquisition, Sohio's employees became employees of BP America (the "Sohio Legacy Employees"). On January 1, 1988, BP America converted the Sohio Plan, along with several other defined benefit plans, into a new plan called the BP America Retirement Plan (the "ARP"). Notably, the ARP was also a defined benefit plan that retained the formula used by the Sohio Plan to calculate its members' pension distributions. One year later, however, BP America converted the ARP into the BP Retirement Accumulation Plan (the "RAP," the conversion from the ARP to the RAP as the "Conversion," and the date of the Conversion as the "Conversion Date"), the other Defendant-Appellee in this action. Unlike its predecessor plans, the RAP was a cash balance plan, which calculated distributions, in

No. 21-20617

part, based on fluctuating interest rates. Thus, under the RAP, employees bore some additional risk because distributions were now based, in part, on market performance.

## A. The *Guenther* Action

On April 13, 2016, Plaintiffs-Appellees, two Sohio Legacy Employees, Fredric A. Guenther and Walton Fujimoto,[1] (the "*Guenther* Plaintiffs") filed a class action complaint against the RAP and BP America (collectively, "BP") in the United States District Court for the Southern District of Texas alleging that BP violated numerous provisions of the Employee Retirement Income Security Act ("ERISA") by causing Sohio Legacy Employees to forfeit benefits that they had already accrued and failing to properly disclose this change in their benefits when BP initiated the Conversion (the "*Guenther* Action"). Specifically, the *Guenther* Plaintiffs alleged that BP should have credited the Sohio Legacy Employees' new RAP opening account balances with the value of their ARP ending account balances as of the Conversion Date, January 1, 1989. But according to the *Guenther* Plaintiffs, BP instead calculated the Sohio Legacy Employees' ARP ending account balances as of a date earlier than the Conversion Date. BP then calculated the present value for those ARP ending account balances as of the Conversion Date using an interest rate of eight percent, which the *Guenther* Plaintiffs claimed was unreasonably high, and thus, perpetually undervalued the Sohio Legacy Employees' accrued benefits as reflected in their RAP account balances.[2] The complaint also alleged that BP misrepresented to Sohio Legacy Employees that their benefits under the RAP would be "as good or better"

---

[1] Plaintiff-Appellee Les Owen was eventually added as a third named plaintiff.

[2] Additionally, the *Guenther* Plaintiffs alleged that BP retroactively dated the opening account balances of the RAP for the Sohio Legacy Employees such that the employees forfeited benefits that they had already accrued under the ARP.

than those that they had received under the ARP. Accordingly, the *Guenther* Plaintiffs sought reformation of the RAP so that those Sohio Legacy Employees whose retirement benefits were negatively affected would be in as good a financial position as they would have been had they remained members of the ARP.

After the *Guenther* Plaintiffs amended their complaint (while maintaining the core of their allegations, claims, and the relief they sought in their original complaint), BP moved to dismiss. On March 13, 2019, the district court granted BP's motion in part, dismissing all but one count: the count seeking reformation of the RAP; however, the court ordered the *Guenther* Plaintiffs to replead that count "in a manner that specifically states a recognized cause of action." On April 5, 2019, the *Guenther* Plaintiffs filed a second amended complaint with a single count claiming that BP breached its fiduciary duties relating to the Conversion in violation of ERISA § 404(a). The complaint seeks "all equitable relief to redress [BP's] breach of fiduciary duty, including reformation" under § 502(a)(3) of ERISA. Alternatively, the *Guenther* Plaintiffs assert that they are entitled to the remedies of surcharge or equitable estoppel as well as "all equitable relief to redress [BP's] breach of fiduciary duty."

Following over a year of extensive discovery, the *Guenther* Plaintiffs moved to certify their class under both Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure; this motion was subsequently referred by the district court to a magistrate judge. BP opposed the motion and moved for summary judgment. On March 12, 2021, the magistrate judge issued a recommendation that both a general class and subclass should be certified under Rule 23(b)(2) but declined to make a recommendation as to either the general class's or subclass's viability under Rule 23(b)(3). The magistrate judge recommended that the general class should consist of:

> All persons under age 50 as of January 1, 1989 who were active participants in the [RAP] as of January 1, 1989, and whose retirement benefit under the [ARP] exceeds the retirement benefit offered (or that will be offered) by the [RAP], as amended on the benefit commencement date, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

He also recommended that the subclass should consist of all members of the general class who "signed a release upon separation of employment."

### B. The *Press* Action

Meanwhile, on September 14, 2020, over four years after the *Guenther* Plaintiffs filed their original complaint, Movant-Appellant Michael Press, along with 276 other individuals (the "*Press* Plaintiffs"), filed a two-count complaint in the United States District Court for the Northern District of Ohio against BP America and its parent company BP p.l.c., the successor in interest to British Petroleum (the "*Press* Action"). The *Press* Plaintiffs, all of whom are Sohio Legacy Employees, similarly claimed that BP America had breached its fiduciary duties regarding its disclosures concerning the Conversion in violation of § 404(a). The *Press* Plaintiffs also sought equitable relief under § 502(a)(3) through either reformation of the RAP, surcharge, or equitable estoppel. In its second count, the complaint alleges that BP p.l.c. "knowingly participated" in BP America's alleged breach of fiduciary duty and was consequently unjustly enriched. Accordingly, the *Press* Plaintiffs sought "restitution and/or disgorgement of profits in the amount of [BP p.l.c.'s] unjust enrichment."

BP America subsequently moved to transfer the *Press* Action to the Southern District of Texas or alternatively stay that suit pending the resolution of the *Guenther* Action. On December 23, 2020, the district court granted BP America's motion and ordered that the *Press* Action be

transferred to the Southern District of Texas under the first-to-file rule,[3] reasoning that the parties and claims in both cases were "nearly identical" and noting the relatively advanced stage of the litigation in the *Guenther* Action. The *Press* Action was then stayed upon its transfer to the Texas district court pending resolution of the class certification motion in the *Guenther* Action.

### C. The *Press* Plaintiffs move to intervene

On March 26, 2021, after the magistrate judge had issued his recommendation for class certification, the *Press* Plaintiffs moved to intervene in the *Guenther* Action "for the purpose of objecting" to the magistrate judge's recommendation. In their motion, the *Press* Plaintiffs contended that they were entitled to intervene as of right but that the court should allow for permissive intervention if it found the former theory unpersuasive. On March 31, 2021, the district court adopted the magistrate judge's recommendation in its entirety without addressing the *Press* Plaintiffs' pending motion. The *Press* Plaintiffs filed their reply brief on their motion after the district court had adopted the magistrate judge's recommendation. Acknowledging this development, the *Press* Plaintiffs now sought to intervene so that they could opt out of the newly certified class, or alternatively, enter the *Guenther* Action as named plaintiffs.

---

[3] *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."). The Ohio district court relied on a similar Sixth Circuit precedent in invoking this rule. *See Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) ("The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts. Simply stated, it provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment." (internal quotations omitted)).

No. 21-20617

On December 7, 2021, the district court denied the *Press* Plaintiffs' motion to intervene. The court first addressed the motion concerning intervention as of right, which is adjudicated using a four-factor test. Assuming that the first three factors of this test had been met, the court devoted its analysis to the fourth factor: whether the *Press* Plaintiffs' interests were adequately represented by the existing parties. The court determined that both the *Guenther* and *Press* Plaintiffs had the same ultimate objective— "to remedy a pension shortfall allegedly caused by breaches of fiduciary duty and violations of [ERISA]"—and thus, there was a presumption of adequate representation. Accordingly, the court denied the motion to the extent the *Press* Plaintiffs sought to intervene as of right. Turning next to the request for permissive intervention, the court concluded that allowing the *Press* Plaintiffs to intervene would unduly delay the resolution of the *Guenther* Action and that the action's certified class would adequately represent their interests. Consequently, the court denied the remaining portion of the motion as well.

On appeal, the *Press* Plaintiffs[4] only challenge the district court's decision to deny their intervention as of right. The *Press* Plaintiffs contend that the certified class in the *Guenther* Action inadequately represents their interests, and therefore, they have a right to intervene in this case.

## II.

A movant is entitled to intervene as of right if she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties

---

[4] The *Press* Plaintiffs addressed the court below collectively, but the case caption states that Michael Press is the only appellant. We refer to Appellant, however, as the *Press* Plaintiffs in recognition that the underlying motion belonged to the *Press* Plaintiffs, and Appellant appears to be making arguments on their behalf.

7

adequately represent that interest." FED. R. CIV. P. 24(a)(2). This circuit utilizes a four-factor test to determine if Rule 24(a)(2)'s requirements have been met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). A movant must show that she satisfies each factor of the above test to be entitled to intervene. *Id.*

We review a ruling denying intervention as of right *de novo*. *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "At this stage, the court takes the movant's factual allegations as true." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022).

To demonstrate inadequate representation under Rule 24(a)(2), a movant's burden is likewise "minimal." *Brumfield*, 749 F.3d at 345. Consequently, a movant must only show that the existing representation "*may* be inadequate"; this showing need not amount to a certainty. *La Union del Pueblo Entero*, 29 F.4th at 307–08. Nevertheless, a movant must overcome two presumptions so that this requirement "ha[s] some teeth." *Brumfield*, 749 F.3d at 345. The first only arises if "one party is a representative of the absentee by law"—which is inapplicable to this case. *Id.* The second "arises

when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* (quoting *Edwards*, 78 F.3d at 1005). To overcome this presumption, the movant must establish "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.*

"In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. Differences of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do not rise to an adversity of interest. *Lamar v. Lynaugh*, 12 F.3d 1099, 1099 n.4 (5th Cir. 1993) (per curiam); *accord SEC v. LBRY, Inc.*, 26 F.4th 96, 99–100 (1st Cir. 2022) ("A proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation."); *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999); *United States v. Territory of Virgin Islands*, 748 F.3d 514, 522 (3d Cir. 2014); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987); *Jenkins by Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996) ("A difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation."); *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 954–55 (9th Cir. 2009); *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1020–21 (D.C. Cir. 2003); *see, e.g.*, *Ruiz v. Collins*, 981 F.2d 1256 (5th Cir. 1992) (per curiam) (failure of class counsel to make "all the arguments" as would-be intervenor insufficient for intervention as of right); *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984) ("the mere possibility that a party *may* at some future time enter into a settlement cannot alone show inadequate representation"); *cf. Entergy Gulf States La., L.L.C. v. U.S. EPA*, 817 F.3d 198, 204 (5th Cir. 2016) ("Entergy does not seem to dispute that Sierra Club and EPA have divergent interests. Rather, Entergy contends that the matters of stay and bifurcation concern mere litigation

tactics that are within the district court's broad discretion to regulate and do not warrant intervention.").

In denying the *Press* Plaintiffs' motion to intervene as of right, the district court held that the *Press* Plaintiffs failed to overcome the presumption that they shared the same ultimate objective with the *Guenther* Plaintiffs. On appeal, the *Press* Plaintiffs dispute that holding, arguing that their interests are considerably distinct from those of the *Guenther* Plaintiffs, pointing to a slew of negligible or spurious differences between the two actions. We will address each of those in turn.

The *Press* Plaintiffs contend that part of the pension shortfall theory underlying their claims is absent from the *Guenther* Action. According to the *Press* Plaintiffs, the *Guenther* Action assumes that Sohio Legacy Employees' RAP opening account balances were correct as of the Conversion Date, while the *Press* Action alleges that those opening balances were insufficient when compared to the ARP's ending account balances. The *Press* Plaintiffs also argue that the *Guenther* Action only seeks the sole remedy of reformation, while the *Press* Action seeks the remedies of surcharge, disgorgement, and restitution in addition to reformation. The *Press* Plaintiffs, however, largely misconstrue the nature of the *Guenther* Action.

Whether the operative complaint in the *Guenther* Action includes the relevant portion of the pension shortfall theory is a function of litigation strategy—it does not reflect the scope of the *Guenther* Plaintiffs' interests. Similar factual allegations underpin the claims in both actions. Both groups of plaintiffs allege the same primary harm—that the respective defendants made insufficient disclosures regarding the Conversion—based on violations of the same provision in ERISA. Most importantly, both the *Guenther* and *Press* Plaintiffs share the same ultimate objective: they all seek for their retirement plans to be made whole due to these alleged inaccurate

No. 21-20617

disclosures. It is unnecessary for a complaint to allege every fact or theory that is conceivably relevant so that a plaintiff may ultimately obtain relief. A complaint opens the door to litigation; it is not the final word on the matter. Plaintiffs are given many opportunities to amend their pleadings throughout the course of an action, including stages later than where the *Guenther* Action currently stands.[5] "If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001).

The first two complaints in the *Guenther* Action specifically alleged the pension shortfall theory.[6] Although that theory is absent from the *Guenther* Plaintiffs' second amended complaint, this is not conclusive

---

[5] *See* FED. R. CIV. P. 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."); *id.* 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.").

[6] For example, the original complaint in the *Guenther* Action states:

In establishing the Opening Accounts as of January 1, 1989, the BP Plan used an interest rate of 8 percent to calculate the present value of the benefits that had accrued under the original Sohio Plan. That interest rate exceeded the maximum interest rate permitted under ERISA and the Internal Revenue Code for determining lump sum present values.

Similarly, the first amended complaint in the *Guenther* Action reads:

During the cash balance conversion, the RAP reduced the accrued benefits that participants had already earned in the BP ARP by calculating the present value of the accrued benefit as though the formula change had been made before January 1, 1989. Consequently, the Opening Account balance reduced participants' accrued benefits.

evidence that it has necessarily been abandoned. Rather, they may choose to pursue the theory if this case proceeds to trial. Ultimately, though, this is just one of many strategies that the *Guenther* Plaintiffs may employ in an effort to prove that BP breached its fiduciary duties. The *Press* Plaintiffs cannot point to an interest of theirs that is unique to and—at a minimum—*potentially* in conflict with those of the *Guenther* Plaintiffs. The absence of the relevant portion of the pension shortfall theory from the *Guenther* Plaintiffs' operative complaint, on its own, cannot amount to one.

The remainder of the *Press* Plaintiffs' arguments are also unavailing, all for the same reason: they lack a distinct interest that is at risk of being adversely represented in the *Guenther* Action. *First*, the *Press* Plaintiffs assert that they seek remedies in their action that are distinct from those that are sought in the *Guenther* Action. They contend that the *Guenther* Plaintiffs only request reformation of the RAP, while the *Press* Plaintiffs also seek surcharge, disgorgement, and restitution. But in their operative complaint, the *Guenther* Plaintiffs specifically state that they are entitled to surcharge (as an alternative remedy) in addition to the catchall "all equitable relief to redress [BP's] breach of fiduciary duty," which according to the complaint, "include[es] reformation of the [RAP]." Restitution and disgorgement may be enforced to the extent that they are equitable remedies under § 502(a)(3). *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity'" (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993))); *id.* at 218 ("Congress's choice to limit the relief under § 502(a)(3) to 'equitable relief' requires us to recognize the difference between legal and equitable forms of restitution."); *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (describing disgorgement as sitting "squarely within the heartland of equity"). Therefore, those remedies are necessarily subsumed within "all equitable relief" that is sought by the *Guenther* Plaintiffs.

No. 21-20617

The *Press* Plaintiffs counter that the district court certified the *Guenther* Action "on the basis that it seeks reformation only." In his recommendation, the magistrate judge reasoned that the class should be certified under Rule 23(b)(2), in part, because the *Guenther* Plaintiffs seek declaratory relief. He subsequently noted that reformation is a "form of declaratory relief in a similar context." Nowhere in his recommendation (or in the district court's order adopting the recommendation) is there any language precluding the *Guenther* Plaintiffs from maintaining their alternate pleadings. Nor do the *Press* Plaintiffs cite any authority that such a limitation should be presumed. Consequently, the premise of the *Press* Plaintiffs' argument is meritless.[7]

*Second*, the *Press* Plaintiffs argue that they "might" be inadequately represented in the *Guenther* Action because, unlike in the *Press* Action, the *Guenther* Plaintiffs have not brought a claim against BP p.l.c. According to the *Press* Plaintiffs, the *Guenther* Action will likewise not address this claim or its attendant allegations. But the *Press* Plaintiffs cannot explain why the inclusion of BP p.l.c. would be uniquely beneficial or detrimental to them. The *Press* Action alleges that BP p.l.c. "knowingly participated" in BP America's breach of its fiduciary duties by "directing, approving, or otherwise assisting in" BP America's breach. The *Press* Plaintiffs' theory of liability for BP p.l.c. is thus predicated on the same facts underlying its breach

---

[7] The *Press* Plaintiffs also assert that their action is different because their complaint alleges that BP America made misrepresentations in connection with an investigation it commissioned from 2011 through 2014—an allegation that they argue is absent from the *Guenther* Action. But for the reasons explained above, the choice to include this allegation is merely another strategic decision and not germane to the case. Furthermore, the rights of both the *Guenther* and *Press* Plaintiffs would be equally implicated based on this allegation. The facts surrounding those allegations are equally applicable to both groups of Plaintiffs. And the *Press* Plaintiffs do not seek a remedy unique to this allegation that would only be applicable to their interests and not those of the *Guenther* Plaintiffs.

of fiduciary duty claim against BP America—there is no independent theory of liability against BP p.l.c. Furthermore, the remedy sought by both the *Guenther* and *Press* Plaintiffs is identical, with or without BP p.l.c. as a party: to be made whole from the same alleged breach of fiduciary duty. Therefore, the *Guenther* Plaintiffs' decision to exclude BP p.l.c. from their action amounts to no more than a strategic decision as well.

*Third*, the *Press* Plaintiffs contend that our decision in *La Union del Pueblo Entero*, 29 F.4th 299, earlier this year supports intervention in this case. In *La Union del Pueblo Entero*, the United States and multiple groups of private plaintiffs sued to enjoin the State of Texas, along with state and local officials, from enforcing a new election law passed by the Texas Legislature. 29 F.4th at 304. Shortly thereafter, several committees associated with the Republican Party moved to intervene under Rule 24(a)(2), but their motion was denied. *Id.* On appeal, we reversed the district court's decision and allowed the committees to intervene as of right, even though they shared the same ultimate objective with the governmental defendants—upholding the election law. *Id.* at 308–09. We reasoned that because "there [were] reasons to believe the Committees' interests [were] less broad than those of the governmental defendants," this could lead to "divergent results." *Id.* at 308. Specifically, the governmental defendants preferred not to resolve the case on the merits, planning instead to move for dismissal based on sovereign immunity and standing arguments. *Id.* The committees, however, were mainly interested in the "finality and certainty" that would come with a decision on the statute's constitutionality. *Id.* at 308–09. Unlike the governmental defendants, the committees "rel[ied] on the expenditure of their resources to equip and educate their members, along with relying on the rights of the Committees' members and volunteers who participate in the election," all of which was implicated by the statute at issue. *Id.* at 309. Because these private economic interests were distinct from the public

interests held by the governmental defendants, we determined that "[n]either the State nor its officials [could] vindicate [the committees'] interest while acting in good faith." *Id.*

*La Union del Pueblo Entero* exposes the gaps in the *Press* Plaintiffs' argument. There, the intervenors demonstrated that their interests were narrower than and distinct from those of the governmental defendants. Although both the governmental defendants and the intervenors sought to defend the statute, the intervenors were able to show that their interests might be put at greater risk under the governmental defendants' preferred defense strategy alone. Here, the *Press* Plaintiffs have failed to articulate how their interests are distinct from those of the *Guenther* Plaintiffs. Accordingly, the *Press* Plaintiffs cannot demonstrate how the *Guenther* Plaintiffs' chosen defense strategy is uniquely favorable to their own interests while placing those of the *Press* Plaintiffs in jeopardy.

*Fourth*, the *Press* Plaintiffs argue that denying them intervention as of right deprives them of their right to due process. According to the *Press* Plaintiffs, they are at great risk of having their interests overlooked because they can neither intervene in nor opt out of the *Guenther* Action. *See* Fed. R. Civ. P. 23(c)(3) (only providing opt-out rights for members of a class certified under Rule 23(b)(3)). The *Press* Plaintiffs contend that the outcome of the *Guenther* Action may have a broad preclusive effect on any future collateral attack. Indeed, we have stated that "[t]he concept of intervention within a class certified under [Rule 23(b)(2)] balances the more likely impairment of the individual's interest since he is unable to opt out of this class. Also, by allowing intervention, subsequent collateral attacks on the due process preclusive effect of a judgment are avoided." *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 332 (5th Cir. 1982). *Woolen* recognized the increased utility of intervention in a class without opt-out rights where the would-be intervenor risked having her interests ignored. Here, because the

No. 21-20617

*Press* Plaintiffs cannot identify a unique interest of their own, they are unable to specify how a determination in the *Guenther* Action could have a future detrimental preclusive effect.

### III.

The *Press* Plaintiffs cannot demonstrate that their interests diverge from those of the *Guenther* Plaintiffs in any meaningful way. We are thus satisfied that the *Press* Plaintiffs will be adequately represented despite their absence from the *Guenther* Action. Therefore, for the foregoing reasons, we AFFIRM.